UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT FLORIDA

Case No. 1:22-cv-23619-RKA/LMR

IN RE APPLICATION OF DAILANE
INVESTMENTS LIMITED AND
MICHAEL MAILLIS FOR JUDICIA
ASSISTANCE PURSUANT TO
28 U.S.C. § 1782

### RESPONDENTS' REPLY IN SUPPORT OF
### MOTION TO SERVE LIMITED RECIPROCAL DISCOVERY

Respondent H.I.G. Capital, LLC ("HIG"), joined by Sami Mnaymneh ("Mnaymneh"),[1] replies in support of the *Motion to Serve Limited Reciprocal Discovery* ("*Motion for Discovery*"; ECF No. 38).[2]

#### INTRODUCTION

The objective and indisputable facts establish Petitioners' gross misrepresentations to the Court to obtain the 1782 Subpoenas – *i.e.*, that the supposed Luxembourg proceeding was "imminent" and "will be filed" – on which the Court expressly based its grant of those subpoenas. With the discovery in hand, Petitioners moved to use that discovery in this Court and expressly disclaimed any intent to file any Luxembourg action. *See Mot. for Authorization*. Petitioners' express representations and then express disclaimer place their communications with their counsel centrally at issue; Petitioners cannot disclose the content of such privileged communications – *i.e.*, "we intended to file the Luxembourg proceeding, as sworn by our counsel" but then "Petitioners

---

[1] Mnaymneh was just granted intervention status. *See* ECF No. 44. He joins in the motion and this reply and is referenced collectively with HIG as "Respondents."

[2] Undefined capitalized terms are as defined in the *Motion for Discovery* and/or *Petitioners' Response in Opposition to Respondent HIG's Motion (*etc.*)* ("*Opposition*"; ECF No. 46).

want to proceed directly in this Court" – and then turn around and try to shield those same communications behind a claim of privilege.

Furthermore, contrary to Petitioners' contentions, the Eleventh Circuit in *Glock v. Glock, Inc.*, expressly recognizes the potential for "***subsequent*** challenges" to issued Section 1782 subpoenas, specifically in instances where a party is "concerned" a "§ 1782 applicant is attempting to use foreign litigation ***as a ruse for obtaining discovery in the United States*** without complying with the usual procedures of the Federal Rules of Civil Procedure." 797 F.3d 1002, 1009 (11th Cir. 2015) (emphasis added). The objective facts strongly support Respondents' belief that Petitioners did exactly what *Glock* recognizes as a possibility, and Respondents are entitled to discovery to develop the facts on whether Petitioners engaged in a *Glock*-style ruse.³

As detailed in the *Motion for Discovery*, Petitioners improperly used Section 1782 to obtain pre-suit discovery from Respondents without complying with the Federal Rules. The Court authorized the 1782 Subpoenas based on Petitioners' repeated and sworn representations that the Luxembourg action was being filed and authorized discovery expressly for ***that*** Luxembourg action, and nothing else. "Petitioners' contemplated lawsuit ***satisfies the requirement of being for use in a proceeding before a foreign tribunal***." *Order Granting Petition* at 5 (emphasis added). Petitioners then expressly disclaimed any intent to file the action on which the Court's ruling was based. *See Mot. for Authorization* at 8 (Petitioners "want[] to proceed against HIG [] directly for their damages ***instead of*** its subordinates" by filing an action in this Court (emphasis added)). Allowing Petitioners to make direct misrepresentations to the Court with impunity to obtain discovery under Section 1782 and then use it solely in this Court would be the height of inequity.

---

³ The discovery requests Respondents seek leave to serve are attached as ***Exhibit A***.

I.       **RESPONDENTS ARE ENTITLED TO RECIPROCAL DISCOVERY**

Petitioners spend considerable time in their *Response in Opposition to Motion for Discovery* ("*Response*"; ECF No. 46) challenging the appropriateness of reciprocal discovery, arguing the requested relief is outside the scope of Section 1782, it is in conflict with "*Glock*, *Intel*, and every other § 1782 case", and it is untimely. *Response* at 8. Each argument fails.

*First*, Section 1782 does not address reciprocal discovery. Instead, reciprocal discovery is authorized by the Courts to ensure a level playing field between parties in Section 1782 proceedings – exactly what Respondents seek here. *See Mot. for Discovery* at 7 n.5 (citing cases).

*Second*, Petitioners' argument that no reported case is like this one and, therefore, the *Motion for Discovery* should be denied, *Response* at 5, 8, proves too much. The fact that no court has been presented with (i) direct and **sworn** representations of an "imminent" and "intended" foreign proceeding by a Section 1782 applicant, (ii) on which the court relies, and then (iii) the applicant pulls a 180-degree disclaimer of those representations is not a basis to **deny** the requested discovery. Instead, the requested discovery should be granted precisely because the situation is so unusual. The lack of analogous precedent does not make Respondents' request "in direct conflict with *Glock*, *Intel*, and with every other Section 1782 case," *Response* at 8, because no such conflict exists. *Intel* and *Glock* recognized that discovery may be appropriate, and *Glock* expressly recognizes the possibility of a Section 1782 applicant trying a "ruse" to avoid the Federal Rules. *See* 797 F.3d at 1009. This may well be a case of first-impression, but, if Petitioners' abuse of the Section 1782 process is allowed to stand, it will not likely be the last time this happens.

*Third*, Petitioners' claim that the request is untimely, *Response* at 6, is meritless. Just as was the Court, Respondents were hoodwinked. Had Petitioners actually filed the Luxembourg proceeding, instead of asserting that they were going to do so and then deciding not to once the discovery was in hand, the 1782 Subpoenas would have been proper. The Court relied on

Petitioners' representations, authorized the subpoenas, and Respondents asserted timely objections, produced over 56,700 pages of discovery, answered ten written interrogatories, and produced Mr. Mnaymneh for deposition. *See Opposition* at 7. It was only when Petitioners flipped their position and denied any intent to file in Luxembourg and, instead, sought to sue in this Court when they filed their *Motion for Authorization* on January 17, 2025, that the ruse became clear. The *Motion for Discovery* was filed on February 13, 2025. Petitioners' implicit argument that Respondents should have known Petitioners were lying to the Court and to Respondents two years ago is absurd – as is Petitioners' contention that the *Motion for Discovery* is untimely.[4]

## II. THE RECORD SHOWS GOOD CAUSE FOR DISCOVERY INTO PETITIONERS' ACTUAL INTENT TO INITIATE THE LUXEMBOURG PROCEEDING

Once discovery is authorized under § 1782, Federal Rules 26 through 36 provide the rules under which the discovery is to be conducted. *See Weber v. Finker*, 554 F.3d 1379, 1384-85 (11th Cir. 2009) (citing *In re Clerici*, 481 F.3d 1324, 1336 (11th Cir. 2007)). In fact, had the parties been unable to finalize the Confidentiality Agreement, Respondents would have needed to seek a protective order under Rule 26(c). *See, e.g., Glock*, 797 F.3d at 1009 (citing Fed. R. Civ. P. 26(c)).

It is within the Court's broad discretion to allow the requested discovery because district courts are free to manage discovery as they see fit. *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling."); *XYZ Corp. v. Individuals*, No. 24-cv-22168, 2024 WL 4488239, at *1 (S.D. Fla. July 16, 2024) (Altman, J.) ("[C]ontrol of discovery is committed

---

[4] *In re Furstenberg Fin. SAS*, No. 16-cv-60266-BLOOM, 2018 WL 735670 (S.D. Fla. Jan. 10, 2018) (cited in the *Response* at 7, 11), also does not provide support for Petitioners' attempt to avoid discovery here. Judge Bloom was not facing a situation where that petitioner swore it was filing a foreign action and then turned around and disclaimed the foundation of the Section 1782 discovery grant; instead, the dispute was over pre-deposition discovery, which Judge Bloom denied. *See, e.g., id.* at *2-4. Here, Mr. Mnaymneh's deposition proceeded, in large part because Petitioners' ruse was not revealed until January of this year.

to the sound discretion of the trial court[.]") (citation omitted)). Courts considering motions for leave to serve discovery ask whether the moving party has demonstrated good cause for the relief sought. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 23-cv-02949, 2024 WL 493473, at *1 (M.D. Fla. Jan. 29, 2024) (citation omitted). "Good cause may be found where the need for … discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Tracfone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015) (internal quotations and citation omitted).

Respondents meet the "good cause" threshold. To obtain the 1782 Subpoenas, Petitioners must have, at a minimum, actually contemplated a foreign proceeding. *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Furthermore, the *Order Granting Petition* (ECF No. 15) specifically and expressly relied on Petitioners' repeated representations concerning the intended Luxembourg action and the sworn declaration attesting that Petitioners "intend[ed] to sue HIG47 in the Grand Duchy of Luxembourg." *Id.* at 2. In determining that Petitioners satisfied Section 1782, the Court concluded, "Petitioners' contemplated lawsuit ***satisfies the requirement of being for use in a proceeding before a foreign tribunal***." *Id*. at 5 (emphasis added).

But the *Motion for Authorization* then expressly repudiated Petitioners' intent to pursue any "contemplated" or, as Petitioners repeatedly stated even more definitively, "imminent" foreign proceeding. *See id.* at 8. Only now recognizing the consequence of the admission – *i.e.*, that Respondents must be allowed discovery, since Petitioners destroyed the foundation of their Section 1782 application – Petitioners have ***again*** flipped their position, now asserting in their *Response* that the ***claims*** that served as the basis for the supposed Luxembourg proceedings are still very much "live." *See id.* at 4. Even if the claims were "live" (they are not), neither the existence of a

*potential claim* nor the ***mere possibility of a future international proceeding*** meets Petitioners' burden under Section 1782.[5]

Had Petitioners been honest at the outset and told the Court that their Luxembourg claims were not "imminent" and "will be filed," their Section 1782 application would have to have been denied. "At a minimum, a § 1782 applicant must present ... some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *In re Gorsoan Ltd.*, 843 F. App'x 352, 355-56 (2d Cir. 2021) (reversing issuance of Section 1782 subpoena because intent to use discovery in a "contempt proceeding that it may someday to bring" is insufficient). More pertinent to the *Motion for Discovery*, Petitioners' sudden about face on their position further buttresses the request for discovery, because it is more clear by each of their filings that they have been attempting to game the Court from the outset.[6]

A district court's approval of a Section 1782 application is not immune from "full adversary testing … of the ***assertions*** and evidence that results in the court's approval of § 1782(a) discovery." *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 474 (5th Cir. 2022) (addressing *ex parte* Section 1782 application) (emphasis added). That is exactly what

---

[5] Petitioners have a separate fundamental problem: A breach of fiduciary duty – here, a breach of the Fiduciary Agreement – is an element of any aiding and abetting claim. *See*, *e.g.*, *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989-90 (11th Cir. 2020); *City of Miami Gen. Emps. v. Comstock*, C.A. No. 9980-CB, 2016 WL 4464156, *23 (Del. Ch. Aug. 24, 2016), *aff'd*, 158 A.3d 885 (Del. 2017). But, as Petitioners informed the Court and the Court expressly recognized, "Petitioners' claims arising out of the Fiduciary Agreement are subject to the ***exclusive*** jurisdiction of the courts of Luxembourg." *Order Granting Pet.* at 5 (emphasis added). Consequently, Petitioners cannot prevail on an aiding and abetting claim in this Court unless and until they establish – in the Luxembourg court – a breach of the Fiduciary Agreement. Correspondingly, the Court can avoid the issues raised by *Motion for Discovery* by simply denying or deferring the *Motion for Authorization*, because Petitioners' mandatory first step is a proceeding in Luxembourg – *i.e.*, the action they swore they were filing at the outset of this action.

[6] To the extent the Luxembourg proceeding is "live," the Court could cut the Gordian knot Petitioners have wound by simply staying this action until Petitioners actually file it.

Respondents seek here, and exactly what the Eleventh Circuit contemplated in *Glock* if a "ruse" were discovered to be the foundation of the grant of a Section 1782 application.

Moreover, it cannot both be true that (i) Petitioners substantiated their *Petition* with "exhaustive details" from "months of careful analysis" and "hundreds of pages of exhibits" to support their "contemplated" Luxembourg claims and yet (ii) the foreign proceedings were "entirely contingent upon" the discovery produced by Respondents. *See Response* at 9. Petitioners obtained the discovery, and yet why is there no Luxembourg proceeding – a decision conveniently made (at best) only after obtaining the discovery they now seek to use in this Court?

It is also objectively false to claim any Luxembourg proceeding was "entirely contingent" on the discovery produced by Respondents. At the time Petitioners filed their *Petition*, they knew (i) Mnaymneh was co-Chief Executive Officer of HIG **and** Director of HIG Europe, "which is one of ***two*** shareholders of HIG47" and one of the putative defendants to the foreign proceeding; that he "sat on the investment committee that approved the Flip Transaction"; and (ii) he was "involved in the launch of the HIG Europe III, the fund that received the Maillis Group assets . . . ." *Petition* at 9 (emphasis added). Petitioners identify three emails produced by HIG in 2024, as giving them the supposed ammunition needed to assert an alleged aiding and abetting claim against Respondents. *See Mot. for Authorization* at 7, Exs. 7–9. **These emails** – Petitioners' alleged smoking guns – ***do not include any information Petitioners did not know before they filed the Petition***. Petitioners' argument thus reveals their ulterior motives in seeking information under Section 1782 to use against Respondents, which further shows discovery is warranted.[7]

---

[7] As correctly noted by Petitioners' *Memorandum of Law (*etc.*)* (ECF No.4), HIG and HIG Europe email addresses use the same domain name: "@higcapital.com." *Id*. at 9. Each email involves communications between Mnaymneh and other HIG Europe representatives discussing the Flip Transaction proposed to Petitioners by HIG Europe, *see* Letter Before Action (ECF No. 5-5) at ¶ 30, and ultimately approved by the investment committee of which Mnaymneh is a member, *see Petition* at 9.

Petitioners also **knew** HIG47 was (and remains) in the midst of a liquidation proceeding when they filed their *Petition*. *See id.* at 9; *see generally* Letter Before Action (addressing letter to HIG47 and noting it is in liquidation). Thus, Petitioners and their European counsel also knew that recovering the substantial damages they claim they are due from HIG47 would be a near Herculean task, *see* Letter Before Action at 11, as Petitioners would necessarily become unsecured creditors and last in priority.[8] This further supports the belief that Petitioners instituted this proceeding as a ruse, fully aware that they never were going to file in Luxembourg.

Relying on *Glock*, Petitioners seem to suggest it holds that filing a domestic action after obtaining a subpoena pursuant to Section 1782 cannot be used as evidence of a ruse. *See Response* at 11 (citing *Glock*, 797 F.3d at 1010 n.10). This, however, grossly mischaracterizes *Glock*. The Eleventh Circuit noted "the statute is entirely silent on the issue of whether material procured under § 1782 may be used after it is **lawfully** obtained and used for the purpose for which it was obtained." 797 F.3d at 1006-07 (emphasis added). The issue here is whether Petitioners "lawfully" obtained the discovery for the represented purpose when they obtained the discovery and then disavowed the foundation of their *Petition*. As the Eleventh Circuit stated explicitly, "Parties concerned in a particular case that a § 1782 applicant is attempting to use foreign litigation ***as a ruse for obtaining discovery in the United States*** without complying with the usual procedures of the Federal Rules of Civil Procedure ***can and should bring evidence of such chicanery to the § 1782 court's attention***." *Glock*, 797 F.3d at 1009 (emphasis added). That is exactly what Respondents are doing here and exactly why discovery is necessary – because Respondents need the discovery to further show Petitioners' "chicanery" evidenced by their serial flip-flops.

---

[8] *See generally* A. Nicolas, LOYENS LOEFF, *Restructuring & Insolvency Q&A* (Insolvency in Luxembourg), June 24, 2021, https://www.loyensloeff.com/insights/news--events/news/restructuring--insolvency-qa-insolvency/ (an unsecured creditor's share of proceeds are limited to the liquidation value of the debtor's assets based on a distribution priority).

### III. ANY PRIVILEGE PROTECTING DOCUMENTS AND COMMUNICATIONS RELATING TO THE FOREIGN PROCEEDING WAS WAIVED, AND RESPONDENTS HAVE A SUBSTANTIAL NEED FOR THE DISCOVERY.

"[T]he attorney-client privilege was intended as a shield, not a sword. [A party] waives the privilege if it injects into the case an issue that in fairness requires an examination of otherwise protected communications." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1418-19 (11th Cir.), *modified in irrelevant part*, 30 F.3d 1347 (11th Cir. 1994). As the Eleventh Circuit recognized in *Cox*, "'to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.'" *Id*. at 1419 (quoting *Conkling v. Turner*, 883 F.2d 431, 434-35 (5th Cir.1989) (other internal quotation omitted)). That is exactly the situation here, because the issuance of the 1782 Subpoenas necessarily depended on Petitioners' [mis]representations regarding their alleged intent to initiate the Luxembourg proceedings.

Petitioners based this whole action on their purported, sworn intentions to file suit against HIG47, HIG Europe, and others in Luxembourg, *see generally Petition*, and the Court relied on those representations, *see Order Granting Petition* at 5; Petitioners then based their *Motion for Authorization* on their claim that they "decided that they wanted to proceed against HIG Capital directly for their damages instead of its subordinates," *Motion for Authorization* at 8. The purported intent to file in Luxembourg and subsequent decision not to file there but to file in this Court may, of course, reflect privileged communications – but Petitioners have directly injected those communications into this action and, indeed, placed them centrally at issue. Thus, to the extent those communications are privileged, it would be "manifestly unfair" to deny Respondents to the discovery they seek. *Cox*, 17 F.3d at 1419. [9]

---

[9] In addition to the sword-and-shield issue, any privilege is arguably waived by the crime-fraud exception, because Petitioners not only repeatedly stated in the *Petition* that the Luxembourg action was "imminent" and was going to be filed, but the statements were supported by a sworn affidavit by Petitioners' Luxembourg counsel. *See* ECF No. 6 ¶ 3 ("The lawsuit contemplated by Mr. Maillis and Dailane Investments Limited **will therefore be filed** in the Grand Duchy of

Failure to allow discovery to test the veracity of Petitioners' conflicting representations would allow Petitioners to use the attorney-client privilege as both a sword and shield, causing Respondents severe prejudice and allowing a facial abuse of the Section 1782 process to remain unchecked. "[W]hether a litigant [*i.e.*, Petitioners] improperly used § 1782 for the purpose of obtaining United States discovery that otherwise would not have been authorized" is an eminently proper question. *Glock*, 797 F.3d at 1009. The answer to that question may well involve Petitioners' privileged communications, but Petitioners are the ones who injected those communications into this proceeding and then exacerbated the problems by first making direct representations to the Court based on obviously-privileged communications and then disavowing those privileged communication-based representations through another set of privileged-communication-based representations. As a direct consequence, any claims of privilege must be rejected.[10] *Sow v. James River Ins. Co.*, No. 19-cv-81065, 2020 WL 1322886, at *4 (S.D. Fla. Mar. 20, 2020) (finding waiver of attorney-client and work product privileges because key confidential information was placed at issue); *Boateng v. Geico Gen. Ins. Co.*, No. 10–60147, 2010 WL 11550033, at *2 (S.D. Fla. June 15, 2010) (same).

Or, alternatively, the Court could just avoid the problems Petitioners have created by denying the *Motion for Authorization* – which would make the request for discovery moot.

## CONCLUSION

For the foregoing reasons, Respondents ask the Court to grant the *Motion for Discovery*, or deny it as moot following the denial of the *Motion for Authorization* the *Motion for Discovery*.

---

Luxembourg in the Commercial Chambers of the *Tribunal d'Arrondissement* of Luxembourg." (emphasis added). And, as noted above, the Court expressly relied on that sworn statement. *See Gutter v. E.I. Dupont De Nemuors*, 124 F. Supp. 2d 1291, 1298 (S.D. Fla. 2000) (Gold, J.) (the attorney-client privilege may be overcome by the crime-fraud exception).

[10] The Court is has the discretion to first review the documents sought by Respondents *in camera*. *See Gutter,* 124 F. Supp. 2d at 1317.

|  |  |
|---|---|
| Dated: March 3, 2025 | **AKERMAN LLP**<br>201 East Las Olas Boulevard<br>Suite 1800<br>Ft. Lauderdale, FL 33301<br>Tel.: 954-463-2700<br>Fax: 954-468-2454<br><br>By: */s/ Jason S. Oletsky*<br>    Jason S. Oletsky, Esq.<br>    Florida Bar No. 009301<br>    jason.oletsky@akerman.com<br>    Christopher S. Carver, Esq.<br>    Florida Bar No. 993580<br>    christopher.carver@akerman.com<br>    Michelle Hogan<br>    Florida Bar No. 1010992<br>    michelle.hogan@akerman.com<br><br>*Counsel for H.I.G. Capital, LLC* |