UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-23619-ALTMAN/Reid

IN RE APPLICATION OF DAILANE
INVESTMENTS LIMITED AND MICHAEL
MAILLIS FOR JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. SECTION 1782
_____/

## ORDER ON MOTIONS

**THIS CAUSE** is before the Court on Petitioners' Michael Maillis and Dailane Investments Ltd.'s Motion for Authorization to Use Discovery in Litigation and to Order Removal of Confidentiality Designations [ECF No. 17] and Respondent H.I.G. Capital, LLC's ("H.I.G. Capital" or "Respondent") Motion to Serve Limited Reciprocal Discovery. [ECF No. 36]. Following the Court's March 10, 2025, hearing [ECF No. 49] with the parties, and upon review of the filings, it is **ORDERED** that Petitioner's Motion [ECF No. 17] be **GRANTED**. Given that H.I.G. Capital's Motion to Serve Limited Reciprocal Discovery essentially argues for denial of Petitioners' Motion for Authorization, its Motion [ECF No. 36] is **DENIED**.

### I.  BACKGROUND

A.  *The Procedural Posture.*

Title 28 U.S.C. § 1782 authorizes federal district courts to order discovery from a person residing within the court's jurisdiction for use in a foreign or international court proceeding. In November 2022, Dailane Investments Limited ("Dailane") and Mr. Michael Maillis applied to this Court for an order of judicial assistance, pursuant to 28 U.S.C. § 1782, to issue subpoenas to gather documentary evidence from H.I.G. Capital, LLC, and testamentary evidence from two of its employees, Sami Mnaymneh and Anthony Tamer, who reside in the Southern District of Florida.

[ECF No. 4]. According to Dailane and Mr. Maillis, the requested relief was for the purpose of obtaining discovery for use in connection with an "imminent legal proceeding by the Petitioners in the Commercial Chambers of the Luxembourg District Court" against H.I.G. Luxembourg Holdings 47 S.a.r.l. ("H.I.G. 47"), a Luxembourg entity owned and controlled by H.I.G. Capital, L.L.C. ("H.I.G. Capital"). [*Id.*]. The litigation would concern the sale of companies within the Maillis Group to another affiliate of HIG Europe, H.I.G. Luxembourg Holdings 46 S.à r.l. ("H.I.G.46"). [ECF No. 4 at 1-2]. The Petitioners believed that H.I.G.47 had abandoned its fiduciary duties to them and had sold Maillis Group corporate assets to an HIG-affiliated fund at below value for a discount of "tens of millions of dollars." [*Id.* at 2].

Petitioners asserted that H.I.G. Capital, headquartered in this district and as the ultimate parent corporation of H.I.G. 47 and other related entities, held relevant documents and communications regarding the sale of Maillis Group assets. [*Id.*]. Petitioners filed declarations by their attorneys who attested that they intend to sue H.I.G. 47 in Luxembourg. [ECF No. 6 at 1]. The Application included proposed subpoenas directed to H.I.G. Capital, Sami Mnaymneh, and their attorney. [ECF Nos. 7-3, 7-5, 7-6]. The proposed subpoenas generally sought testimony and documents related to decisions made by the H.I.G. Investment Committee, internal H.I.G. communications pertaining to valuation of certain H.I.G. assets, communications with potential buyers concerning the auction of Maillis Group assets, and other similar information. [ECF Nos. 7, 4]. The Court granted Petitioners' Application on April 4, 2023. [ECF No. 15].

Commencing in July 2023, the parties negotiated a Confidentiality Agreement in connection with the § 1782 discovery. The parties expressly reserved "Petitioners' right to use documents produced in this action in 'any causes of action yet to be discovered, whether such cause of action is filed in Florida or Luxembourg,' so long as it sought consent first."

Confidentiality Agreement [ECF No. 17-2 at 3]. The Confidentiality Agreement further provided that:

> Petitioners shall not be permitted to use the CONFIDENTIAL INFORMATION or any information contained therein in connection with any other legal action, proceeding or matter, other than the Foreign Proceedings or in the Instant Proceedings before the Southern District of Florida.

[*Id.* at 5] Petitioners state that the parties "created a process where if Petitioners intended to use confidential documents in a separate Florida-based proceeding, [] they would first give notice to the Respondents, and if Respondents objected, then the parties could seek relief in Court." [ECF No. 17 at 5] (internal citation omitted).

> The Confidentiality Agreement also states:
>
> The parties agree that notwithstanding the preceding limitations, nothing in this Agreement is intended to waive Petitioners' right to use the CONFIDENTIAL INFORMATION in support of any causes of action yet to be discovered, whether such cause of action is filed in Florida or Luxembourg. . . .
>
> Nothing in this Agreement shall prevent a Party from using any CONFIDENTIAL INFORMATION in a hearing, trial, proceeding, or appeal in the Foreign Proceedings or in the Instant Proceedings before the Southern District of Florida.
>
> Should Petitioners intend to use CONFIDENTIAL INFORMATION in support of a currently unknown cause of action to be brought in a legal proceeding other than the Foreign Proceedings or the Instant Proceedings, they must provide fourteen (14) days' written notice to and seek consent from the Respondents. Such written notice must specifically identify the documents sought to be used, the parties against whom the documents will be used, the jurisdiction and venue Petitioners seek to use the documents, and the causes of action or claims to be asserted. Should Respondents object to the use of the CONFIDENTIAL INFORMATION, either party may seek relief with the Court in the Instant Proceedings.

[ECF No. 17-2 at 3, 5, 7].

B. *The Instant Motions.*

(i) <u>Petitioners' Motion for Authorization.</u>

Petitioners seek authorization to use evidence obtained from the § 1782 discovery in a domestic action filed in this district court against H.I.G. Capital LLC." Pet'r's Sealed Mot. [ECF No. 24-1 at 10].[1] Petitioners have filed the Complaint but it remains sealed on this Court's docket and has not yet been served on Defendants. *see also* [ECF No. 24-6] (Complaint to *Dailane Investments Ltd. v. HIG Cap. LLC*, 1:25-cv-20568 (S.D. Fla.)).

As background, Mr. Maillis sold Maillis Group to H.I.G. Europe in 2015, but he retained a 14.925% interest it which was held by H.I.G.47 pursuant to the terms of a fiduciary agreement which prohibited the sale of these assets except on 'arms' length terms. [ECF No. 24-1 at 2] (internal citations omitted). According to Petitioners, the § 1782 discovery revealed that "H.I.G. 47, by and through H.I.G. Europe, redeemed that interest for much less than it was worth when they sold the remaining Maillis Group entities from one H.I.G. Europe fund to another in 2022 (the 'Flip Transaction') at a price very favorable to the new fund." [*Id.*]. Despite Petitioners' suspicion that the Maillis Group was worth more than the $157 million sale price, H.I.G. Europe assured Petitioners that the deal would lead to a "commercially fair outcome." [*Id.*] Petitioners then hired a forensic accounting expert, who concluded that the transaction could not be justified as arms' length and accordingly wrote a "Letter before Action" to H.I.G. 47 and its liquidator. [*Id.*].

Petitioners claim emails recently produced by Respondents in the §1782 action shows Mr. Mnaymneh's involvement in the alleged Flip Transaction scheme and "showed that Mr. Mnaymneh did more than make a suggestion; he ran point on getting that particular transaction

---

[1] Petitioners' sealed Motion and exhibits are linked to [ECF No. 24].

4

underway . . . ." [*Id.* at 7] (internal citation omitted). Petitioners served interrogatories on Mr. Mnaymneh and took his deposition. [*Id.* at 8]. Around that time, counsel for Petitioners informed Respondents' counsel of the possibility of a domestic claim in this district court against H.I.G. Capital based on the documents produced, "explaining that Petitioners wanted to be above board and act in good faith." [*Id.*] (internal citation omitted). Following the deposition, Petitioner decided that it would sue H.I.G. Capital directly, rather than its foreign affiliates, for damages for losses based upon the Flip Transaction. [*Id.*].

Petitioners allege they wrote to Respondents on November 8, 2024, identifying documents they wanted to use in the district court complaint against H.I.G. Capital. [ECF Nos. 24-1 at 8; 24-6 at 3]. Petitioners "further identified which excerpts of those documents would be used in a draft complaint . . . and objected to their designation as confidential because the information was either not commercially sensitive or had been shared with third parties." [ECF No. 24-1 at 9] (internal citation omitted). Respondents objected, calling this request a "gross abuse of the 1782 process." [*Id.*] (internal citation omitted).

In response to Petitioners' request to this Court for authorization to use the documents and remove the confidentiality designations, H.I.G. Capital argues four main points. First, the discovery sought is not being used in a foreign proceeding, nor do Petitioners intend to do so. [ECF No. 38 at 10–11]. Second, Petitioners never "lawfully obtained" discovery from H.I.G. Capital because "H.I.G. 47 and its executives were never the Petitioners' target defendants." [*Id.* at 12] (emphasis deleted). Third, the Confidentiality Agreement bars Petitioners from using § 1782 discovery as it was obtained under false pretenses. [*Id.* at 16]. Fourth, the Court should not remove the confidentiality designations because H.I.G. Capital has a substantial interest in its business communications and partners. [*Id.* at 18].

5

(ii)    H.I.G. Capital's Motion to Serve Limited Reciprocal Discovery.

In addition to filing a Response to Petitioners' Motion, H.I.G. Captial filed a Motion to Serve Limited Reciprocal Discovery "to obtain information regarding the supposedly 'imminent' foreign proceedings that were the foundation of the Application for Judicial Assistance . . . ." [ECF No. 36 at 1]. H.I.G. Capital believes that the evidence obtained through discovery will "show no such foreign proceeding was ever actually considered . . . and that this action is and always has been a ruse to obtain information that Petitioners could not otherwise obtain properly for a suit in this Court." [*Id.*]. Without this discovery, H.I.G. Capital will be severely prejudiced and deprived of the ability to respond fully to the Motion for Authorization. [*Id.* at 2].

## II.    LEGAL STANDARD

"'Section 1782 is the product of congressional efforts, over the span of nearly 150 years to provide federal-court assistance in gathering evidence for use in foreign tribunals.'" *In re Bapa Holdings, Corp.*, No. 22-MC-20504, 2025 WL 1025164, at *3 (S.D. Fla. Apr. 7, 2025) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004)). Congress intended for a district court to use its discretion on whether to grant or deny an application under 28 U.S.C. § 1782(a). *See In re Bapa Holdings, Corp.*, 2025 WL 1025164, at *3 (internal citation and quotation marks omitted). If a court grants the application, then "§ 1782 no longer governs or otherwise limits the later use of evidence properly obtained pursuant to the statute." *Id.* (citing *Glock v. Glock, Inc.*, 797 F.3d 1002, 1006 (11th Cir. 2015); *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017)).

Instead, "the only limits on the later use of materials properly obtained in § 1782 discovery are those imposed by the Court by way of the order granting the § 1782 application or a subsequent protective order." *In re Bapa Holdings, Corp.*, 2025 WL 1025164, at *3 (citing *Glock*, 797 F.3d at 1009). The district judges are "afforded wide discretion" in their interpretation of a protective order, and "'when an issuing judge interprets alleged ambiguities in his or her own order, [the Eleventh Circuit] accord[s] substantial deference to that interpretation.'" *In re Bapa Holdings, Corp.*, No. 22-MC-20504, 2025 WL 1025164, at *3 (quoting *Stansell v. Revolutionary Armed Forces of Columbia*, 120 F.4th 754, 766 (11th Cir. 2024)); *see Glock*, 797 F.3d at 1006 ("We review an order interpreting a protective order for an abuse of discretion.") (internal citation omitted.)

### III.  DISCUSSION

Petitioners' Motion should be granted for four reasons.

A.  <u>Evidence Produced In a § 1782 Action May Be Used in a Domestic Proceeding</u>

First, the relief sought is appropriate under the Eleventh Circuit's holding in *Glock v. Glock, Inc.*, 797 F.3d 1002, 1006 (11th Cir. 2015). In *Glock*, the court wrote that while it is "clear from the statutory language that [§ 1782] does not also establish a method for procuring discovery for use in a domestic proceeding, . . . nothing in the language of § 1782 . . . purports to limit later uses of evidence that have been properly obtained under § 1782." *Glock*, 797 F.3d at 1006. Indeed, the Eleventh Circuit concluded that "[n]othing in the statutory language or in the Senate Report accompanying the law suggests that Congress ever specifically contemplated whether documents previously obtained under § 1782 could later be used in civil United States proceeding." *Id.* at 1007. It only followed that permitting the "'use' of evidence for litigation is not the same thing as 'admitting' evidence in litigation." *Id.* at 1009.

7

Here, requiring Petitioners to "rediscover" documents in its second lawsuit—"documents they have lawfully obtained, regardless of whether they could have obtained them through discovery in the case in which they use them"—would be a waste of judicial economy and run afoul of clear statutory language and precedent. *See id.* at 1008–09. Given the explicit instructions in *Glock*, there is no prohibition within § 1782 that would bar Petitioners as a matter of law in using evidence procured in a secondary civil litigation before this Court. *See id.* at 1010.

Second, the *Glock* ruling affords deference to the lower court's interpretation of protective orders regarding the evidence discovered in § 1782 litigation. *See* 797 F.3d at 1006. *Glock* found that the district court erred when it narrowed the appellant's protective order under the mistaken belief that Section "1782 precludes the use of evidence obtained under it in United States civil litigation[.]" *Id.* at 1011. The court reasoned that the protective order did not bar the use of the § 1782 evidence in United States civil litigation since its language allowed the appellant to use discovery in any "'proceeding to which [she] is a party[.]'" *Id.* The protective order, "on its face, authorizes [the appellant] 'to use' the § 1782 evidence in any litigation anywhere in the world, in which she is involved." *Id.* The only hurdle the appellant needed to scale was obtaining leave from the court to do so, which she did. *Id.*

Here, the Court sees no reason to interpret the clear language in the Confidentiality Agreement any differently. The parties drafted this agreement, negotiated its terms, and eventually agreed that it would govern. It is abundantly clear that "*nothing*" in the Confidentality Agreement is "intended to waive Petitioners' right to use the CONFIDENTIAL INFORMATION in support of any causes of action yet to be discovered, whether such cause of action is filed in Florida *or* Luxembourg. [ECF No. 17-2 at 5] (emphasis added). Discovery stemming from this litigation can be used in only two places: Luxembourg or the Southern District of Florida—exactly as it is before

8

the Court now. To find otherwise would mean that "[Section] 1782 may never be used in domestic civil litigation." *See Glock*, 797 F.3d at 1011. But that would be incorrect under this Circuit's precedent. *See id.* ("[A]s we have explained, that is not a construction of § 1782 that we find to be supported by the law."); *accord In re Mother's Milk, Inc.*, No. 5:20-MC-00004-M, 2020 WL 2514315, at *7 (E.D.N.C. May 15, 2020). The Court finds that Petitioners' proposed use of the § 1782 materials against H.I.G. Capital in another proceeding within this district is permissible under the Confidentiality Agreement. *See In re BAPA Holdings, Corp.*, 2025 WL 1025164, at *6.

B. <u>Section 1782 Requires Only that the Foreign Proceeding Be Within "Reasonable Contemplation."</u>

Third, H.I.G. Capital claims Petitioners' § 1782 action was merely a ruse to obtain discovery before filing litigation in this Court because Petitioners have not yet filed a foreign proceeding in Luxembourg and, as such, misled the Court into granting the Application in the first place. [ECF No. 38 at 1-3].

Of course, a court should not permit a party to use § 1782 "to obtain[] discovery in the United States without complying with the usual procedures of the Federal Rules of Civil Procedure[.]" *Glock*, 797 F.3d at 1009. But Courts have not imposed any specific deadline regarding how quickly Petitioners must proceed in foreign courts. *See In re Bapa Holdings, Corp.*, 2025 WL 1025164, at *3. The U.S. Supreme Court "reject[ed] the view . . . that § 1782 comes into play only when adjudicative proceedings are 'pending' or 'imminent.'" *Intel Corp.*, 542 U.S. at 259. Instead, "the statute requires only those foreign proceedings 'be within reasonable contemplation.'" *In re: Application of Bracha Found.*, 663 F. App'x 755, 763 (11th Cir. 2016) (citing *Intel Corp.*, 542 U.S. at 259). An applicant just needs to show that "[t]he future proceedings must be more than speculative, it suffices that the district court has sufficient indication that a

9

proceeding in court would eventuate in which the evidence gathered can be weighed impartially." *In re: Application of Bracha Found.*, 663 F. App'x at 763 (cleaned up).

Petitioners contend they learned of Mr. Mnaymneh's alleged role in the Flip Transaction after Respondents produced documents in the months after the Order granting the Application; "Petitioners' counsel then began noticing "unusual deficiencies in the production." [ECF No. 24-1 at 6]. The "genesis" of the Flip Transaction was revealed once the parties exchanged discovery in 2024 that showed "HIG Capital[] . . . , among others, aided and abetted the breaches of fiduciary duty owed to Dailane and Mr. Maillis." [*Id.* at 8]. It was not until March 29, 2024, that H.I.G. Capital produced documents, stating that a HIG Europe executive told Mr. Mnaymneh that "[t]he deal before was very beneficial for the buyer, ie not paying 4.3€m of cash flows to seller which clearly belonged to seller. . . ." [*Id.* at 9] (quoting [ECF No. 24-6 ¶ 116]).

Notably, H.I.G. Capital did not object to Petitioners' § 1782 application. Instead, they coordinated Mr. Mnaymneh's deposition and interrogatory responses and acknowledged the possibility of Petitioners again suing in this district. [ECF No. 24-1 at 8]. It appears plausible that, rather than misleading opposing counsel and the Court, Petitioners simply took a reasonable amount of time to contemplate their legal strategy once allegations of the Flip Transaction surfaced. *See Glock*, 797 F.3d at 1010 n.10 (finding no evidence of chicanery where the appellant filed a 354-page complaint in a RICO action to "suggests that she long ago made the decision to file an action against the U.S. Glock Entities in the United States. . . . While drafting a 354–page complaint certainly takes time . . . it does not necessarily require eighteen months.").

Respondents did not object to the Application, later agreed that the evidence could be used in either a domestic or foreign proceeding and have not detailed the nature of the discovery they intend to pursue to prove their claim that the Application was a ruse. At this juncture, the discovery

10

would serve no relevant purpose. The Court denies Respondent's request for discovery [ECF No. 36].

    C. <u>Respondents Have not Shown that Information in Petitioners' Complaint is Confidential.</u>

Lastly, Petitioners argue that the Court must determine whether the information in the draft complaint is confidential and whether to overrule Respondents' objections to using the discovery in the *Dailane* lawsuit. [ECF No. 24-1 at 10, 13]. Petitioners believe, *inter alia*, that none of the information in the draft complaint is entitled to confidentiality. [*Id.* at 15]. Rather than point to any specific statements in the Complaint, H.I.G. Capital's general response references a handful of the documents produced and states only that as an investment firm, it has a "substantial interest" in protecting the confidentiality of its internal communications and communications with its partners and purchasers. [ECF No. 38 at 18].

The Court agrees with Petitioners that Respondent has no support for the confidentiality designation here for two reasons. First, H.I.G. Capital's conclusory statement that it has a substantial interest in protecting its information is insufficient. *See, e.g.*, *Regions Bank v. Kaplan*, No. 8:16-cv-2867-T-23AAS, 2017 WL 11025768, at *2 (M.D. Fla. Dec. 11, 2017) (denying motion to seal exhibits because "Defendants' blanket assertion that the subject exhibits contain confidential business or financial information is insufficient to show good cause for sealing the filings."); *Equal Emp. Opportunity Comm'n v. Univ. of Miami,* No. 19-23131-CIV, 2021 WL 1889799, at *2 (S.D. Fla. May 11, 2021), *on reconsideration*, No. 19-23131-CIV, 2021 WL 2387373 (S.D. Fla. May 17, 2021) (denying the defendant's motion to seal even where the contested documents could give its competitors an unfair advantage since the defendant failed to "cite any binding authority allowing a trial court to seal salary information in an employment discrimination case.").

Second, upon review of the Confidentiality Agreement, the draft complaint, and the filings, H.I.G. Capital has failed to make a good cause showing that their documents require the Court to deem them confidential.

The Confidentiality Agreement defines confidential information as containing:

> (i) proprietary or commercially sensitive information; (ii) confidential information of a non-party that Respondents must maintain in confidence under a separate confidentiality agreement; or (iii) any confidential information that Respondents believe in good faith will result in significant risk of competitive harm if disclosed without restriction upon use or further disclosure.

[ECF No. 17-2 at 4].

Nothing in the draft complaint meets these definitions. The documents refer only to the Maillis Group transaction at issue in this case. The Court agrees with Petitioners' conclusion that confidentiality is not warranted as the challenged transaction closed nearly three years ago. [ECF No. 24-1 at 15]. The HIG entities were both the buyer and the seller, which reduces the risk of competitive harm. [*Id.*]. And most of the information relating to the alleged Flip Transaction has "been on this docket for more than two years, since Petitioners filed the Declaration of Paul Ferguson in support of their Petition on November 4, 2022." [*Id.*]; *see also* [ECF No. 24-9 at 3–4].

The longer information remains on the public docket, the less the need to compel the court to classify documents as confidential. *See, e.g.*, *Consejo de Defensa Del Estado de La Republica de Chile v. Espirito Santo Bank*, No. 09-20613-CIV-GRAHAM, 2010 WL 2712093, at *2 (S.D. Fla. July 7, 2010) (finding that the defendant's testimony is not entitled to confidentiality when the record has been on the public docket for months and the defendant failed to "provid[e] much by way of specifics that show a reasonable basis, i.e. good cause, to upset the Court's general policy of public access to the Court record."); *Noveshen v. Bridgewater Assocs., LP*, No. 13-

61535-CIV, 2016 WL 1579264, at *2 (S.D. Fla. Apr. 19, 2016) (same); *Gubarev v. Buzzfeed, Inc.*, 365 F. Supp. 3d 1250, 1257 (S.D. Fla. 2019) (same); *Echevarria v. Expedia Grp., Inc.*, No. 19-22621-CIV, 2024 WL 3969249, at *2 (S.D. Fla. Aug. 28, 2024) (denying the defendant's motion to seal, even though the parties' contract revealed compensation figures that could give competitors an unfair edge since their need did not "rise[] to the level of good cause to overcome the public's right of access and interest in transparent proceedings.").

Therefore, the Court finds that Petitioners are authorized to file the draft complaint and the complaint may be publicly filed because Respondents have not shown that information contained in the Complaint is confidential. Respondents' objections are overruled and the challenged confidentiality designations may be removed.

Finally, H.I.G. Capital's argument that the forum selection clause in the fiduciary agreement with the Maillis Group requires Petitioners to bring any disputes arising from the fiduciary agreement in Luxembourg [ECF No. 38 at 19] is not properly before the Court in this case. That is an argument to raise in a motion to dismiss the Complaint filed against Respondents and should not be considered here where the relief sought is the authorization to use § 1782 discovery in a domestic action and a challenge to confidentiality designations.

### IV.  CONCLUSION

For the reasons expressed above, it is **ORDERED** that Petitioners' Motion for Authorization to Use Discovery in Litigation and to Order Removal of Confidentiality Designations [ECF No. 17] be **GRANTED**. The Complaint filed in *Dailane Investments Ltd. v. HIG Cap. LLC*, 1:25-cv-20568 (S.D. Fla.) may be publicly filed. And H.I.G. Capital's Motion to Serve Limited Reciprocal Discovery [ECF No. 36] is **DENIED**.

**SIGNED** this 5th day of May 2025.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Roy K. Altman**

    **All Counsel of Record**